UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


MICHAEL HALL

    Plaintiff

v.                                             Civil Action No.: 2:02-0264

CNA INSURANCE COMPANIES and
eBenX, F/K/A Arbor Administrative Services and
ADMINISTRATOR AVENTIS CROPSCIENCE

    Defendants


## MEMORANDUM OPINION AND ORDER

    Pending are (1) motions for (a) summary judgment and (b) an extension of time to respond filed by CNA Insurance Companies' ("CNA"), Aventis Cropscience, and Aventis Cropscience Long-Term Disability Plan, respectively on November 3 and December 5, 2003, (2) a motion for summary judgment filed by eBenX on October 31, 2003[1], and (3) a motion for summary judgment filed by plaintiff Michael Hall on November 21, 2003.

---

    [1]Plaintiff originally styled his complaint to refer to this entity as simply "Administrator for the Long Term Disability Plan." This initial reference is akin to a "John Doe" entity unknown at the time of filing. Subsequent case events indicate the unidentified party is eBenX, formerly known as Arbor Administrative Services. The court ORDERS that the style of the action be, and it hereby is, amended as reflected above.

I.

Hall was employed at defendant Aventis Cropscience ("Aventis") as a security officer from November 5, 1979, to June 5, 2001. Hall was a participant in an Aventis-sponsored benefit plan known as the Aventis CropScience USA Holding, Inc., Group Disability Plan (the "Plan"). The Plan was funded by an insurance policy purchased by Aventis from CNA.

Eligibility for Plan benefits is dependent upon a claimant suffering from a "disability" under the Plan, the expected duration of which would extend beyond a six-month elimination period. The Plan defines a "disability" as follows:

> "Disability" means that during the Elimination Period and the following 24 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
>
> 1. continuously unable to perform the Material and Substantial Duties of Your Regular Occupation; and
>
> 2. not working for wages in any occupation for which You are or become qualified by education, training or experience.
>
> After the Monthly benefit has been payable for 24 months, "Disability" means that Injury or Sickness causes physical or mental impairment to such a degree of severity that You are:
>
> 1. continuously unable to engage in any occupation for which You are or become

2

>    qualified by education, training or
>    experience; and
>
>    2. not working for wages in any occupation
>    for which You are or become qualified by
>    education, training or experience.

(Admin. Rec. ("AR") at 9).

The definition indicates that a claimant must first demonstrate a disability which prevents him from returning to the duties incumbent to his former position. Upon doing so, the claimant is entitled to 24 months of disability benefits. To receive continued benefits beyond this initial 24 month period, a claimant must additionally demonstrate that his disability precludes him from any other employment.

The Plan includes a review procedure in the event that a claim is denied. The procedure provides as follows:

>    Any denial of a claim for benefits will be provided by
>    the insurance company and consist of a written
>    explanation which will include (i) the specific reasons
>    for the denial, (ii) reference to the pertinent Plan
>    provisions upon which the denial is based, (iii) a
>    description of any additional information You might be
>    required to provide and an explanation of why it is
>    needed, and (iv) an explanation of the Plan's claim
>    review procedure. You . . . may appeal any denial of a
>    claim for benefits by filing a written request for a
>    full and fair review to the insurance company. In
>    connection with such a request, documents pertinent to
>    the administration of the Plan may be reviewed and
>    comments and issues outlining the basis of the appeal
>    may be submitted in writing. You may have
>    representation throughout the review procedure. A

> request for a review must be filed by 60 days after
> receipt of the written notice of denial of a claim.
> The full and fair review will be held and a decision
> rendered by the insurance company no longer than 60
> days after receipt of the request for the review.

Id. at p. 22. On July 30, 2001, Hall sought benefits under the Plan due to scoliosis. The same day, Aventis acknowledged receipt of the claim in writing and notified Hall of the necessary forms CNA required to process the claim.

By September 10, 2001, the claim was screened, with an initial recommendation seven days later that it required investigation. The claim appears to have been assigned to CNA adjuster Patrice Johns and nurse case manager Paula Ennis. On September 13, 2001, CNA acknowledged receipt of Hall's claim.

On September 14, 2001, Ennis conducted an initial nurse case manager consult. She reviewed Dr. William Sale's office visit notes of June 22, 2001, and a July 17, 2001, MRI exam. She also noted that Dr. Jonathan P. Lilly had referred the plaintiff to Dr. Robert Crow. Her impressions, formed after a 25 minute review, follow: "medical too limited to determine function. [Employee] has worked w/this condition and no real change between 1996 and 2001 films." (AR at 37).

4

On September 21, 2001, Johns memorialized an interview with Hall. Hall indicated he was taking hydrocodone, Oxycontin, and Trazodone. Johns recorded that Hall was

> able to bathe, clothe & groom without assistance. Is able drive for about 15-20 minutes without experienc[ing] pain. Unable to drive far distances. Claimant uses microwave & orders out for meals, does not cook. Claimant stated that he has to lie on the floor for relief. Claimant is unable to bend down to tie his shoes, has to sit. Per claimant has someone to do laundry, hired someone to do yard work.
>
> Says if he stands or sits too long he gets really sick, experiences nausea, has worked with the pain in the past but is no longer to do so. According to claimant he is in pain 24 hours a day medication does not stop the pain, just eases the pain.

(AR at 172).

CNA contacted Aventis about Hall's position description. A contractor, Concentra, was retained to perform an on-site job analysis of Hall's duties at Aventis. On February 2, 2002, the analysis was completed. Concentra identified a number of essential requirements of the position and concluded the tasks were physically demanding. On February 8, 2002, after reviewing the submitted medical records and the Concentra report, CNA concluded Hall would be unable to perform the substantial and material duties of his former position as an Aventis security officer.

On March 21, 2002, Hall instituted this action, alleging that Aventis and CNA wrongfully denied him benefits. Hall failed to effect service upon the defendants and, on July 3, 2003, the court entered an order directing him to serve the defendants by July 19, 2003.

On April 2, 2002, CNA informed Hall that he had been granted 24 months of benefits. On May 30, 2002, after failing in his efforts to have CNA correct a $220.19 error in his monthly benefit check, Hall retained counsel to address the matter further. The next day, a CNA official advised the lawyer that the matter was being investigated. It appears that CNA realized on June 14, 2002, that Hall was entitled to a higher amount of benefits, which it apparently commenced paying to him.

The same day, Hall's claim was referred for a vocational assessment. On July 11, 2002, Hall was interviewed anew by CNA. On July 12, 2002, Rannell M. May, a CNA vocational case manager, faxed a one-page "Functional Assessment Tool [(FAT)]" to Dr. Lilly. On July 12, 2002, CNA received Dr. Lilly's response to the FAT, affirming his earlier position that Hall was totally disabled.

6

On September 10, 2002, another nurse case manager opined that Hall could engage in alternative work. On September 11, 2002, May conducted a vocational assessment. Noting the medical assessments of Dr. Lilly, Dr. Crow, and Dr. Sale, May found that the objective medical evidence did not support the limitations asserted by Dr. Lilly. In particular, May relied upon Dr. Sale's finding that there had been no significant changes in objective testing since 1996. With respect to her July 2002 interview with Hall, May noted that he could walk short distances and had no problems with personal hygiene. She acknowledged Hall's statements that he did not drive and that his medication caused him to sleep during the day. She concluded, however, that he was capable of serving as a scheduling clerk, dispatcher, or in small parts assembly/packing.

On September 11, 2002, May informed Hall of her conclusions in writing. Hall was informed that his benefits would terminate in December 2003. CNA additionally informed Hall of his option to take a lump sum representing the total of his expected stream of benefit checks through December 2003. May's letter omitted any explanation of the claim review process outlined in the Plan.

7

On September 24, 2002, Hall amended his complaint and ultimately effected service. CNA and the Aventis entities filed a joint answer. Defendant eBenX filed a separate answer and cross-claim against Aventis. The amended complaint asserts that Hall had to expend resources to secure benefits[2] and that his benefits were wrongfully terminated.

At the court's request, the parties briefed issues surrounding the appropriate standard of review. On September 23, 2003, the court concluded the abuse of discretion standard controlled. Thereafter, the parties filed the instant dispositive motions. CNA and Aventis jointly moved for summary judgment, contending as follows: (1) CNA is the plan administrator and vested with the sole authority to determine benefit eligibility, (2) Aventis was not involved in the decision making process and is hence entitled to judgment as a matter of law concerning Hall's claims and eBenX's cross-claim, (3) Hall failed to exhaust his administrative remedies, and (4) the denial of benefits did not amount to an abuse of discretion.

---

[2]To the extent Hall seeks to recoup attorney fees and related costs expended during the administrative process, his claim fails. ERISA does not contemplate such a recovery. Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003).

8

Defendant eBenX moves for summary judgment both against Hall and Aventis. It incorporates CNA's arguments as to Hall and additionally observes Hall's failure to show eBenX was in any way associated with the benefits process or decision. Regarding Aventis, eBenX relies upon a hold-harmless provision in the parties' services agreement.

Hall contends in his dispositive motion that CNA, Aventis, and eBenX were all Plan administrators that abused their discretion in handling his benefits claim.[3] Hall additionally contends that he should be excused from exhausting his administrative remedies inasmuch as the September 11, 2002, denial letter failed to advise him of the claim review procedures.[4]

---

[3] Hall additionally appears to contend the defendants were not sufficiently solicitous of his treating physicians' opinions. The argument is foreclosed by controlling precedent. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003); Smith v. Continental Cas. Co., 369 F.3d 412, 415 (2004).

[4] Hall asserts in the alternative that his further resort to the administrative process would have been futile. Although CNA appears to have taken a long time to resolve the claim and disburse the correct benefit amount, Hall's minimal showing of futility does not approach that required by our court of appeals. Makar v. Health Care Corp. of Mid-Atlantic (Carefirst), 872 F.2d 80, 82-83 (4th Cir. 1989) (noting "Appellants' bare allegations of futility are no substitute for the 'clear and positive' showing of futility other courts have required before suspending the exhaustion requirement.").

9

II.

A.  eBenX's Motion for Summary Judgment

Hall contends eBenX is properly joined inasmuch as its predecessor was a party to a services agreement with Aventis wherein eBenX agreed to provide consulting services respecting some of Aventis' benefit arrangements. Paragraph 4 of the services agreement, however, provides pertinently as follows:

> [Client Aventis] shall make all determinations with respect to benefit payments under the Plan and to pay such benefits, provided that [eBenX] agrees to consult with Client with respect to the foregoing upon Client's request. For purposes of the Federal Employment Retirement Income Security Act of 1974 ("ERISA") and any applicable state law of similar nature, the Client shall be deemed the administrator of the Plans.

Id. Additionally, the administrative record contains no reference to either Arbor or eBenX. It instead discloses that CNA processed and concluded the eligibility process. In sum, Hall has not offered so much as a scintilla of evidence reflecting that eBenX played any role in the denial of benefits. The court, accordingly, concludes that eBenX is entitled to judgment as a matter of law and ORDERS that eBenX' motion for summary judgment as to Hall be, and it hereby is, granted.

10

This ruling obviates the necessity of reaching eBenX' motion for summary judgment as to its cross claim against Aventis. The court ORDERS (1) that the cross claim be, and it hereby is, dismissed and (2) that eBenX' motion for summary judgment as to Aventis be, and it hereby is, denied as moot.

B. CNA's and the Aventis Entities' Motion for Summary Judgment

CNA and Aventis contend initially that Hall failed to exhaust his remedies within the Plan's administrative review process. The seminal case on point in this circuit is Makar, an opinion stressing the importance of a claimant availing himself of each and every level of the administrative scheme made available to him by his plan:

> ERISA does not contain an explicit exhaustion provision. Nonetheless, an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132. This exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes. . . .
>
> Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement. It would be "anomalous" if the same reasons which led Congress to require plans to

11

> provide remedies for ERISA claimants did not lead
> courts to see that those remedies are regularly
> utilized.
>
> By preventing premature interference with an employee
> benefit plan's remedial provisions, the exhaustion
> requirement enables plan fiduciaries to efficiently
> manage their funds; correct their errors; interpret
> plan provisions; and assemble a factual record which
> will assist a court in reviewing the fiduciaries'
> actions. Indeed, subsequent court action may be
> unnecessary in many cases because the plan's own
> procedures will resolve many claims. In short,
> Congress intended plan fiduciaries, not the federal
> courts, to have primary responsibility for claims
> processing.

Makar, 872 F.2d at 82-83.

Makar's observations have been scrupulously followed over the ensuing 18 years. See, e.g., Gayle v. United Parcel Serv., 401 F.3d 222, 226, 230 (4th Cir. 2005) (noting "[a]n ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." The court of appeals additionally observed "the pursuit and exhaustion of internal Plan remedies is an essential prerequisite to judicial review of an ERISA claim for denial of benefits . . . ."); Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999); Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia, Inc., 102 F.3d 712, 716 (4th Cir. 1996); Hickey v. Digital Equipment Corp., 43 F.3d 941, 945 (4th Cir. 1995).

Based upon this settled line of authority, a reviewing tribunal rightly pauses when asked to insert itself prematurely between parties engaged in a benefits dispute. If that type of precipitous action might in any way undermine "the strong federal policy encouraging private resolution of ERISA-related disputes[,]" other options are worthy of consideration. <u>Gayle</u>, 401 F.3d at 228 (internal quotation marks omitted).

In the instant case, Hall resorted to federal court prior to completion of the first step in the administrative process. That type of preemptive action is wholly inconsistent with the carefully crafted statutory scheme. At the same time, CNA's September 11, 2002, denial-of-benefits letter made no mention of the administrative review options Hall might pursue in challenging the decision. Although CNA attempts to explain and minimize the oversight, the omission is of equal concern when viewed from the vantage point of how Congress intended ERISA to function.

Title 29 U.S.C. § 1133 requires ERISA benefit plans to give notice and an explanation of any claim denial and to afford claimants a reasonable opportunity to receive a "full and fair review" of the decision denying their claim. 29 U.S.C. § 1133. The governing regulations are equally explicit. <u>See</u> 29 C.F.R. §

13

2560.503-1(g) (requiring "a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]").

In view of the importance of following ERISA's procedural requirements, the failure to provide the required notice of additional administrative remedies has caused some courts to excuse further resort to the administrative process. See, e.g. Suntrust Bank v. Aetna Life Ins. Co., 251 F. Supp.2d 1282, 1289 (E.D. Va. 2003) (holding exhaustion of administrative remedies not applicable where the notice of denial did not contain among other items an explanation of the review process); DiMarco v. Michigan Conference of Teamsters Welfare Fund, 861 F. Supp. 599, 606 (E.D. Mich. 1994) (finding exhaustion of administration remedies not applicable where the notice of denial did not contain an explanation of the review process).

Although the parties have not referenced the decisions, the rule is to the contrary in this circuit. Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 n.4 (4th Cir. 1985) ("As administrator of a plan governed by ERISA, the trustee must comply with the procedural requirements of 29 U.S.C. § 1133 and the regulations

14

promulgated thereunder, specifically 29 C.F.R. § 2560.503-1. . . . In the instant case, plaintiff . . . claims . . . that defendant's disability plan failed to comply with the above regulations. Defendant contends that the plan has complied fully with 29 U.S.C. § 1133 and its accompanying regulations and that plaintiff never sought administrative review of the termination of benefits despite fair notice of its availability. . . . [We][t]hink the district court best suited to resolve this dispute upon remand. Should it find noncompliance on the part of [defendant] and no waiver on the part of [plaintiff], the proper course would, once again, be a remand to the plan trustee for 'a full and fair review,' 29 U.S.C. § 1133(2). The question of eligibility must be 'resolved by the plan in the first instance, not the court.'"); Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993) (stating "Normally, where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand to the plan administrator for a 'full and fair review.'").

Inasmuch as CNA failed to comply with the governing procedural requirements found in ERISA and its regulations in

15

that it failed to notify Hall of the Plan's review procedure which has not been exhausted, controlling precedent directs that the claim be remanded to permit conclusion of the administrative process.[5] The court, accordingly, ORDERS that CNA's and the Aventis entities' motion for summary judgment, insofar as it seeks dismissal pending exhaustion of administrative remedies, be, and it hereby is, granted, and denied without prejudice in all other respects. It is further ORDERED that Hall's motion for summary judgment be, and it hereby is, denied without prejudice.

### III.

Based upon the foregoing discussion, the court ORDERS as follows:

1. That CNA's and the Aventis entities' motion for summary judgment, insofar as it seeks dismissal pending exhaustion of administrative remedies, be, and it hereby is, granted, and denied without prejudice in all other respects;

---

[5] Having noted this oversight, the court does not minimize Hall's similar failure to fully utilize the administrative process. As noted, Hall instituted this action prior to CNA's completion of the first step in the handling of his claim, which culminated in an initial decision to grant benefits.

2. That Hall's motion for summary judgment be, and it hereby is, denied without prejudice;

3. That eBenX' motion for summary judgment be, and it hereby is, granted as to Hall's claims, with the residue denied without prejudice as being moot;

4. That eBenX' cross claim be, and it hereby is, dismissed without prejudice; and

5. That this matter is remanded to permit Hall to avail himself of the administrative review process. During that process, it is the court's expectation that both parties will be permitted to supplement the record in a fashion that will permit the "full and fair review" contemplated by the Plan. (AR at 22).

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: March 26, 2007

John T. Copenhaver, Jr.
United States District Judge

17